**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEBORAH WAHLSTROM,

    Plaintiff,

v.

Case No. 15-14113
HON. DENISE PAGE HOOD

SUCCESSLINE, INC., JASON
MONK, EDWARD BURLEY,
GLENN VOORHESS, JEANINE
WALKER, MOUNT CLEMENS
COMMUNITY SCHOOLS BOARD
OF TRUSTEES,

    Defendants.

_____/

**ORDER DENYING MOTION FOR**
**PARTIAL SUMMARY JUDGMENT [#38]**

**I.    INTRODUCTION**

On November 23, 2015, Plaintiff Deborah Wahlstrom ("Wahlstrom") filed the instant action for: (1) tortious interference with an advantageous business relationship or expectancy (the "tortious interference claim"), (2) violations of Michigan's Open Meetings Act, and (3) civil conspiracy, all stemming from her termination as Superintendent of the Mount Clemens Community School District (the "District"). In November 2015, Wahlstrom moved for, and the Court granted her, leave to amend

1

her Complaint to add a second Plaintiff, Successline, Inc. ("Successline"). Plaintiffs filed their Amended Complaint on December 2, 2016. On December 16, 2016, Defendants filed a Motion for Partial Summary Judgment, Dkt. No. 38, seeking dismissal of the tortious interference claim with respect to Wahlstrom only. Defendants' Motion for Partial Summary Judgment has been fully briefed and the Court held a hearing on February 15, 2017. For the reasons that follow, Defendants' Motion for Partial Summary Judgment is denied.

## II.     STATEMENT OF FACTS

Wahlstrom is the co-owner of Successline, a Virginia corporation that provides educational consultation services. For the time period relevant to this action, Successline's only functions were to provide: (1) the services of Wahlstrom as the Superintendent of the District, and (2) a means for Wahlstrom to receive payment from the District.

Successline and the District entered a Professional Services Agreement (the "Agreement") on August 1, 2014. The Agreement was the third 12-month contract that the parties had executed, as the parties had renewed both an initial contract (from August 1, 2012 to July 31, 2013) and a second contract (from August 1, 2013 to July 31, 2014) providing for Wahlstrom's services as Superintendent of the District. The Agreement provided, in part, follows:

1. <u>Employment</u> - Successline Inc. shall provide the services of Deborah Wahlstrom, PhD, (hereinafter "Superintendent") to perform the normal and customary duties and responsibilities of Superintendent of Schools as well as the Curriculum Leader for the School District. It is expressly understood that the Superintendent is an employee of Successline, Inc.

\* \* \* \* \*

3. <u>Duties and Responsibilities</u> - The Superintendent further agrees to devote her talents, skills, efforts and abilities toward competently and proficiently fulfilling all duties assigned by the Board of Education. Further, the Superintendent agrees to comply with and fulfill all responsibilities and tasks required by state and federal law and regulations and by the Board of Education to carry out the educational programs and policies of the School District during the entire term of the Contract. Further, the Superintendent pledges to use her best efforts to maintain and improve the quality of the operation of the School District and constantly promote efficiency in all areas of her responsibility.

\* \* \* \* \*

6. <u>Length of Contract/Extension</u> - This contract shall commence on August 1, 2014, upon agreement by the Board of Education of the School District and Successline, Inc. and terminate on July 31, 2015. The contract may be extended for additional periods of time as agreed upon by the parties. In the event the contract is not renewed[,] the Board of Education will provide a ninety (90) calendar day notice. Further, if the decision by the Board of Education, in its sole discretion, is made not to renew the contract and the contract will expire in less than ninety (90) days, the contract will automatically be extended by the number of days equal to ninety (90) days prior to expiration.

\* \* \* \* \*

Dkt. No. 38, Ex. B, ¶¶ 1, 3, 6, at PgID 494-95. As Superintendent, Wahlstrom also was "expected to attend meetings of the Board of Education and its committees and to attend and participate in School District functions or, on occasion, other civic activities having relation to the School District," without receiving any additional compensation. Dkt. No. 38, Ex. B, ¶ 7, at PgID 496.

On or about April 13, 2015, Deborah Wahlstrom received an anonymous letter jointly addressed to her, the District's Board of Trustees (the "Board"), the "Mount Clemens High School Administration," and Mitch Hotts, a reporter for the Macomb Daily newspaper. This letter sought to "expose some unethical and illegal practices that are taking place at Mount Clemens High School," which allegedly included Defendant Jason Monk's management of the Mount Clemens Athletic Booster Club ("Booster Club"), his selling of food from his own restaurant at sporting events under the guise of raising money for the Booster Club, his lack of a permit or license from the City of Mount Clemens or its Health Department to sell such food, and various other allegations of conflicts of interest and nepotism related to Defendant Monk's coaching of the high school girls' volleyball and basketball teams (the "Anonymous Allegations").

In response to the Anonymous Allegations, Wahlstrom issued a memorandum to all members of the Board, including a copy of a cease and desist letter to the

Booster Club instructing it to cease using the Mount Clemens High School name, logo, and likeness in the organization's fundraising. A press release prepared by Wahlstrom also appeared in Mitch Hotts' July 5, 2015 investigative article in the Macomb Daily. The investigative article addressed the Anonymous Allegations and the lack of authorization to Defendant Monk from the District to affiliate the Booster Club, as he had recently re-organized or re-established it.

On or about June 30, 2015, the members of the Board reviewed Wahlstrom's performance and she received, in Plaintiffs' words, an "overwhelmingly" positive review. Dkt. No. 43, Ex. B ("'She had a 2.8 out of 4 in her evaluation,' [Board President Earl] Rickman said. 'So she wasn't let go based on her accomplishing goals or anything like that. It must have been something other than those elements.'"). On July 6, 2015, all Defendants (4 of the 7 Board members) voted against the renewal of the Agreement, and Wahlstrom's employment with the District concluded in October 2015. Plaintiff alleges that, in response to and retaliation for Wahlstrom's good faith efforts to follow the law, her resistance and refusal to condone Defendant Monk's improper scheme, and speaking publicly on issues of importance to the community, Defendant Monk and the other individual Defendants joined together to oust her as Superintendent of the District.

## III. APPLICABLE LAW

### A. Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Rule 56

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary

judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

## IV. ANALYSIS

Defendants contend that Wahlstrom's tortious interference claim fails as a matter of law because she never had a contractual relationship with the District and

cannot establish any reasonable likelihood or probability of a continued business relationship or expectancy of such a relationship after July 31, 2015. The elements of a tortious interference claim are:

(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract,

(2) knowledge of the relationship or expectancy on the part of the defendant interferer,

(3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and

(4) resulting damage to the party whose relationship or expectancy was disrupted.

*See, e.g., Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich.App. 83, 89-90 (2005); *Badiee v. Brighton Area Schs.*, 265 Mich.App. 343, 365-66 (2005). "The [business relationship or expectancy of a relationship] must be a reasonable likelihood or a probability, not mere wishful thinking." *Trepel v. Pontiac Osteo. Hosp.*, 135 Mich.App. 361, 368 (1984). Defendants challenge only whether Plaintiffs can satisfy the first element as it relates to Wahlstrom.

Defendants argue that "it is not disputed" that Wahlstrom did not have a contract with the District. Defendants contend that the only relevant contract was between Successline and the District and that it was for a specific period that ended on July 31, 2015. Defendants do not cite any authority that supports the proposition

that Wahlstrom had to be a party to an existing contract as a prerequisite to a valid tortious interference claim.

Plaintiffs respond that Defendants' argument ignores that a tortious interference claim does not require the existence of a contract between the parties. Plaintiffs cite the *Baidee* case for the proposition that "the business relationship or expectancy with which the defendant(s) interfered **does 'not [have to be] necessarily predicated on an enforceable contract.**" *Baidee*, 265 Mich.App. at 365-66 (emphasis in Plaintiffs' brief). Defendants do not expressly challenge that argument. And, in addition to the language in *Baidee* (and *Health Call*), the fact that there are two distinct claims under Michigan law – a claim for tortious interference with a contract and a claim for tortious interference with a business relationship or expectancy – supports the conclusion that it is irrelevant whether Wahlstrom had an enforceable contract with the District.

Plaintiffs assert that, even though the Agreement was between the District and Successline, Wahlstrom could still have a valid business relationship or expectancy related to her continued employment as Superintendent. Plaintiffs argue that Defendants have provided no authority to support their argument that a person who provides personal services cannot maintain a tortious interference claim against a set of defendants because another contract is in existence.

Plaintiffs state that purpose of the Agreement was for the District, through Successline, to employ Wahlstrom as Superintendent. Plaintiffs rely on the fact that the Agreement specifically states that: (a) Wahlstrom is the person who will serve as the Superintendent (as opposed to Successline supplying a person to serve as superintendent), and (b) if Michigan law is determined to bar the employment of a person through a third party, then the Agreement would be null and void and the District would "then attempt to negotiate an agreement with the Superintendent [Wahlstrom] which is mutually acceptable." Dkt. No. 38, Ex. B, ¶ 14 at PgID 498. Plaintiffs further rely on Michigan statutes that identify certain requirements that a superintendent must satisfy. Those statutes set forth requirements that only an individual such as Wahlstrom–and not a corporation such as Successline–could satisfy. Citing M.C.L. § 380.1 *et seq.* (including M.C.L. §§ 380.1229 and 380.1246 (which requires that the superintendent have completed continuing education requirements and possess a valid Michigan school administrator's certificate)).

Plaintiffs propose that the economic realities test supports a finding that Wahlstrom has the relationship with the District. Under the economic realities test, a court must look at the totality of the circumstances surrounding the performed work when assessing: (1) the control of the worker's duties; (2) the payment of wages; (3) the right to hire, fire, and the maintenance of discipline; and (4) the performance of

10

the duties as an integral part of the employer's business toward the accomplishment of a common goal. *Choate v. Landis Tool Co.*, 486 F.Supp. 774, 777 (E.D. Mich. 1980) (citing *Askew v. Macomber*, 247 N.W.2d 288 (Mich. 1976)).

Plaintiffs similarly assert that the District was her employer, along with Successline, under a joint-employer theory. An entity is the joint-employer of another entity's formal employee(s) if the two entities "share or co-determine those matters governing essential terms and conditions of employment," *Carrier Corp. V. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985), particularly the ability to hire, fire, discipline, affect compensation and benefits, and direct and supervise performance of that employee. Citing *Sanford v. Main St. Baptist Church Manor, Inc.*, 327 F. App'x 587, 595 (6th Cir. 2009).

Plaintiffs contends that: (a) the District controlled Wahlstrom's duties, as described in Paragraph 1 of the Agreement, (b) Wahlstrom was obligated to carry out the programs and policies of the District, in accord with Paragraph 3 of the Agreement, (c) Wahlstrom had other obligations in and for the District, pursuant to Paragraph 7 of the Agreement, (d) the District had the power to terminate Wahlstrom, pursuant to Paragraph 13 of the Agreement, (e) Wahlstrom had the power to hire, fire, and discipline subordinate District employees, which included Defendant Monk as the coach of the girls' high school basketball team (to whom Wahlstrom issued a

11

written reprimand), and (f) the performance of Wahlstrom's duties was essential to the operation of the District.

Plaintiffs state that the District, along with Successline, "co-determined" the essential terms and conditions of her position as Superintendent of the District. As Wahlstrom is the co-owner (along with her husband) of Successline, it is fair to say that the District, not Successline, was dictating the terms of her service for the District. As Plaintiffs argue, at a minimum, whether the District exercised sufficient control over her to be deemed a joint employer with Successline is a question of fact for the jury. Citing *EEOC v. Regency Windsor Mgmt. Co.*, 862 F.Supp. 189, 191 (W.D. Mich. 1994); *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964).

For the reasons stated above, the Court finds that Wahlstrom has presented evidence that she had a business relationship with the District.

Defendants also suggest that there was no "reasonable likelihood" or probability of a future relationship between Wahlstrom and the District after July 31, 2015, because, by its terms, the Agreement terminated on that date. Defendant contends that, even if there could be an expectancy of the extension of the Agreement, the expectancy was Successline's because it was the party that executed the Agreement and had a relationship with the District.

It is undisputed that, as of July 31, 2015, (a) Wahlstrom had served as

Superintendent of the District for three years, (b) the parties to the Agreement had twice renewed a 12-month contract for her services, and (c) Wahlstrom had received a rating of 2.8 out 4 on or about June 30, 2015, which was a favorable review according to Board President Earl Rickman. Dkt. No. 43, Ex. B at PgID 543. As Mr. Rickman stated, Wahlstrom "wasn't let go based on her accomplishing goals or anything like that. It must have been something other than those elements." *Id.* Evidence in the record reflects the quality of Wahlstrom's evaluation, Mr. Rickman's statements, the timing of Wahlstrom's reprimand of Defendant Monk, and the other actions she took following the publication of the Anonymous Allegations and the investigative article. The Court concludes that those events establish a genuine dispute of material fact whether there was a reasonable likelihood or probability that Wahlstrom would continue to have a business relationship with the District (serving as its Superintendent) after July 31, 2015, but for the actions of the individual Defendants.

## V. CONCLUSION

For the reasons set forth above, IT IS ORDERED that Defendants' Motion for Partial Summary Judgment [#38] is **DENIED.**

IT IS ORDERED.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: May 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 31, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager